# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ANTHONY WOODS (#S-06486),

    Plaintiff,

  v.

MICHAEL MAGANA,

    Defendant.

No. 14 CV 1794

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Woods, a prisoner currently incarcerated at Sheridan Correctional Center, brought this action *pro se* under 42 U.S.C. § 1983, alleging that he was unlawfully held in custody at Stateville Correctional Center for approximately two months after November 28, 2013—the date he says he should have been released. According to Woods, deliberate indifference on the part of prison officials led to his prolonged incarceration. Michael Magana, the acting Warden at Stateville Correctional Center from January 1, 2014 to March 31, 2014, is the sole defendant to this action. Defendant Magana has moved for summary judgment. For the reasons discussed below, the motion is granted.

## BACKGROUND

### *Local Rule 56.1*

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is

no genuine issue" for trial. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The party opposing summary judgment shall submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." *Id*.

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (internal quotation marks omitted). In the case of any disagreement, the opposing party must reference "affidavits, parts of the record, and other supporting materials." *Id*. "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Consistent with the Local Rules, defendant Magana filed a statement of uncontested material facts along with his motion for summary judgment. [41], Def. Stmt. of Fact ("DSOF"). Each relevant substantive assertion of fact in the Local Rule 56.1(a) statement is supported by evidentiary material in the record. Also consistent

2

with the Local Rules, Magana filed and served on Woods a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. [39].

In response, Woods filed a single document titled "Plaintiff's Response to Defendant's Motion for Summary Judgment." [45], ("Pl. Resp."). Plaintiff's response appears to consist of a response to defendant's statement of facts (*see* Pl. Resp. at 3-4); a statement of additional facts (*see* Pl. Resp. at 5-6); and a brief in response to defendant's arguments (*see* Pl. Resp. at 7-15). Woods, however, did not properly dispute defendant's facts because his response contains no citations to the record but rather references information contained in his separate statement of facts. *See* N.D. Ill. L.R. 56.1(b)(3)(B) (explaining that any response to the moving party's statement of facts must include "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon"). Similarly, many of Woods's additional facts are not properly supported by admissible evidence or are purely argumentative and therefore will not be considered.

Accordingly, defendant Magana's facts are admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010). To the extent there are other undisputed material facts in the record, those facts are also considered.

*Facts*

In 2011, Plaintiff Anthony Woods was arrested on charges of violating an order of protection. *See* DSOF ¶ 5. His criminal case was assigned case number 11 CR

3

2113401. DSOF ¶ 6. Woods subsequently was convicted on the charges and sentenced to two years of imprisonment and one year of mandatory supervised release ("MSR"). DSOF ¶¶ 5, 6.

On November 28, 2012, Woods was released on MSR. DSOF ¶ 7. The conditions of Woods's MSR mandated that he not commit any other crimes and that he remain at least 500 feet away from his victim. DSOF ¶¶ 9, 10. Woods understood that if he violated the terms of his MSR, his MSR could be terminated and he would be required to serve the remainder of his sentence. DSOF ¶ 11.

Woods was arrested twice while on MSR. On August 22, 2013, Woods was convicted of a misdemeanor theft that occurred the previous day. DSOF ¶ 13. Approximately one month later, Woods visited his victim's place of employment on three occasions, in violation of the provision of his MSR that required him to remain at least 500 feet away from his victim. DSOF ¶¶ 15, 16. As a result, on September 27, 2013, Woods was arrested. DSOF ¶ 16; *see* Ex. C-1 to DSOF at IDOC000003. Woods also was charged with and subsequently convicted of stalking as a result of his conduct in September 2013. DSOF ¶ 17. He was sentenced to four years of imprisonment on the stalking conviction, with a projected parole date of December 7, 2015 (DSOF ¶¶ 17, 19); the dates of his conviction and sentencing are unclear.

On December 3, 2013, the Prisoner Review Board declared Woods in violation of his MSR "as of 3/14/13" and revoked Woods's MSR. Ex. C-1 to DSOF at IDOC000002. The rationale given for the revocation was that Woods committed the

4

criminal offense of theft on August 22, 2013, and that he violated the no-contact term of his MSR. *Id*. Woods's sentence on case no. 11 CR 2113401 was then recalculated, resulting in a "projected discharge/out date" of February 4, 2014. Ex. C-1 to DSOF at IDOC000001. Woods was transported from Cook County Jail to Stateville Correctional Center the next day (*see* Pl. Resp. at 8 ("I ain't get to Stateville until 12/4/13")), and on February 3, 2014, the Illinois Department of Corrections returned him to the jail (*see* Pl. Resp. at 8 ("I ain't leave Stateville until 2-3-14")).

Woods contends that he had a mandatory release date of November 28, 2013, on case no. 11 CR 2113401.[1] *See* [13] at 4. In December 2013, Woods submitted letters to the Warden and records office at Stateville about allegedly being held past his mandatory release date. DSOF ¶ 23. Defendant Magana, however, was not Stateville's Warden at that time; Magana became Warden at Stateville on January 1, 2014, and served as the Assistant Warden of Operations at Sheridan Correctional Center prior to that time. DSOF ¶ 25. Woods did not submit any correspondence directly to Magana and never spoke to Magana about being held past his release date. DSOF ¶ 22. Likewise, Woods did not submit any written correspondence to the Warden's office after December 2013. *See* DSOF ¶ 23. Magana does not recall receiving any correspondence from Woods. DSOF ¶ 26.

Woods did not submit a grievance about being held past his mandatory release date. DSOF ¶¶ 33, 34. The Illinois Department of Corrections has a formal grievance

---

[1] The parties presented no evidence showing that Woods's original release date was, in fact, November 28, 2013, but defendant does not dispute the date.

procedure for inmates with three steps. DSOF ¶¶ 27–28; *see* 20 Ill. Admin. Code § 504.800 *et seq*. The grievance procedure must be used "to resolve incidents, problems, or complaints other than complaints concerning disciplinary proceedings," but "shall not" be used "for complaints regarding decisions that are outside the authority of the Department, such as parole decisions, clemency, or orders regarding the length of sentences or decisions which have been rendered by the Director." 20 Ill. Admin. Code § 504.810(a); *see* Ex. D to DSOF.

Instead of submitting a grievance, Woods filed this federal lawsuit. Woods alleges in the operative complaint that he was sentenced to two years in prison and was in custody from November 28, 2011, to November 28, 2012. [13] at 4. He also had one year of parole, from November 28, 2012, to November 28, 2013. *Id*. According to Woods, he served parole on house arrest from November 28, 2012 to September 27, 2013, and had a mandatory release date of November 28, 2013. *Id*. However, he was incarcerated at Stateville from December 4, 2013, to February 3, 2014, and "all together I was in IDOC custody from September 27, 2013 to February 3, 2014 that's two months after the mandatory outdate." *Id*. Woods also alleges: "Then on top of that they came and got me again 2/7/14 and brought me back to Cook County for no reason." *Id*. Woods was allowed to proceed on his claim against Defendant Magana that Woods was held for two months past his mandatory release date. [12].

Defendant Magana now moves for summary.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). That is, to survive summary judgment, the nonmoving party must go beyond the pleadings and "identify with reasonable particularity the evidence upon which [he] relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits will also be considered. *See id*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003).

The court does not evaluate the weight of the evidence, judge credibility of witnesses, or determine the truth of the matter, but instead, determines whether

7

there is a genuine issue of triable fact after considering the facts in the light most favorable to the movant. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012) (citation omitted); *see Anderson*, 477 U.S. at 256-57.

## ANALYSIS

Magana argues that he is entitled to summary judgment because: (1) Woods failed to exhaust administrative remedies before bringing this federal action; (2) Woods's incarceration was lawful; and (3) Woods failed to identify evidence showing that Magana was personally involved in any alleged constitutional violation concerning Woods.[2]

---

[2] Magana also argued in his opening brief that Woods's claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because, according to Magana, Woods was attempting to improperly challenge the conviction resulting from the 2013 stalking charges. Magana subsequently withdrew this argument.

8

*Failure To Exhaust*

As an inmate in custody of the Illinois Department of Corrections, Woods was required to follow the grievance process outlined in the Illinois Administrative Code to properly exhaust his claims. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Woods, however, was required to "exhaust only those administrative remedies that [were] available" to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Exhaustion is an affirmative defense on which the defendant bears the burden of proof. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). Moreover, exhaustion is a threshold matter and should be addressed before proceeding to any disposition on the merits. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

Woods did not file a grievance about being incarcerated on the 2011 case past his alleged release date. Defendant, however, failed to establish that Woods was required to file a grievance concerning his release date. Specifically, the Illinois Administrative Code instructs that "[t]he grievance procedure shall not be utilized for complaints regarding decisions that are outside the authority of the Department, such as parole decisions . . . or orders regarding length of sentence . . . ." *See* 20 Ill. Admin. Code § 504.810(a).

The scenario presented by Woods's civil rights action—*i.e.*, a challenge to the calculation of his release date—arguably falls within the scope of complaints for which the grievance process is unavailable because his complaint challenged both the

duration of his term of imprisonment and a calculation potentially performed by the Prisoner Review Board, which appears to be an entity separate from the Illinois Department of Corrections. *See* 730 ILCS 5/3-3-2 (establishing the Illinois Prisoner Review Board). Defendant submitted no evidence showing what entity was responsible for re-calculation of Woods's term of imprisonment or that Woods was required to use the grievance process to resolve his challenge to the calculation of his release date. Defendant also presented no evidence that other potential remedies were available to, but not utilized by, Woods before pursuing this action for damages.[3] Consequently, defendant failed to show that Woods did not exhaust the administrative remedies available to him before bringing this federal action.

### *Woods's November 28, 2013, to February 4, 2014, Incarceration*

Magana argues that he is entitled to summary judgment because Woods was legally incarcerated on the 2013 stalking charges during the time that he allegedly was held past his mandatory release date in the 2011 case, *i.e.,* after November 28, 2013. To establish liability on a claim that he was held past his mandatory release

---

[3] For example, defendant did not argue that Woods could have challenged the recalculation of his release date through direct or collateral review. Ordinarily, *Heck*, 512 U.S. at 486–87, precludes claim for damages under Section 1983 that would call into question the lawfulness of a prisoner's sentence unless the prisoner can prove that the sentence has been reversed on direct appeal or declared invalid by a state tribunal authorized to make such determination. Here, Woods's ability to challenge the recalculated release date is unclear. Although he remained in custody, the sentence on the 2011 case had been discharged at the time he brought this civil action. *See Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006) (explaining that *Heck* "is limited to prisoners who are 'in custody' as a result of the defendants' challenged acts, and who therefore are able to seek collateral review. Take away the *possibility* of collateral review and § 1983 becomes available") (emphasis in original). Defendant made no showing that direct or collateral review of the release date was available to Woods.

date, a prisoner must demonstrate that (1) the defendant "held him beyond the term of his incarceration without penological justification"; and (2) "the prolonged detention was the result of the defendants' 'deliberate indifference'." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Deliberate indifference is shown where the defendant ignored a known risk of prolonged confinement. *Id.*

Defendant's argument that Woods was incarcerated on the 2013 stalking charges after November 28, 2013, is not quite supported by record evidence. The evidence shows that Woods was re-arrested on September 2, 2013, on an MSR violation and subsequently convicted of stalking. Defendant cited to no evidence showing when the stalking charges were brought or when Woods was convicted or sentenced for stalking. Instead, defendant cited to a hard copy of Woods's "internet inmate status" showing a *custody* date of December 7, 2013, on the stalking charges. Ex. F to DSOF. Defendant produced no evidence showing that the custody date is anything but the date on which Woods initially was taken into custody for the offense of stalking. The evidence produced by Defendant shows only that Woods's custody on the stalking charges began nine days after, Woods says, he was to have been released on the 2011 charges.

Nevertheless, Woods (who bears the burden of proof at trial) failed to produce evidence showing he was held beyond the term of his incarceration on the 2011 charges without penological justification. Woods says that his incarceration in the

11

2011 case was to end on November 28, 2013, but defendant produced evidence showing that on September 27, 2013, Woods was taken into custody on a warrant for violation of the conditions of his parole (*see* DSOF ¶ 16; Ex. C-1 to DSOF at IDOC000003), and that the Prisoner Review Board subsequently found Woods in violation of his MSR (DSOF ¶ 18; Ex. C-1 to DSOF at IDOC000002). Woods's sentence was re-calculated at that time (December 3, 2013) and a new release date of February 4, 2014, was established. *See* DSOF ¶ 18; *see* Ex. C-1 to DSOF at IDOC000001. Woods produced no evidence showing that his original release date of November 28, 2013, remained in effect after he was re-arrested for violating the terms of his MSR or that the February 4, 2014 release date had been miscalculated. Woods also cited to no law supporting his implied contention that once a release date is established, it remains unalterable in light of subsequent events such as re-arrest for violation of the MSR terms.

Thus, Woods's assertion that he was entitled to release from custody on November 28, 2013, is an unsupported, conclusory allegation that is insufficient to survive summary judgement. *Anderson,* 477 U.S. at 248 (explaining that non-movant may not rest on allegations in the pleadings or on conclusory statements; non-movant must go beyond the pleadings and support his contentions with documentary evidence). Summary judgment is appropriate on this basis alone. *See Celotex*, 477 U.S. at 322-23 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element

12

essential to the party's case, and on which that party will bear the burden of proof at trial.").

Woods also produced no evidence showing that Magana knew about Woods's alleged attempt to bring his release date to the attention of the former Warden and therefore Woods cannot establish that Magana was deliberately indifferent to Woods's allegedly prolonged incarceration. Record evidence shows that Magana became the Warden at Stateville on January 1, 2014, but that Woods did not send written correspondence to the Warden's office on or after January 1, 2014; Woods sent all correspondence concerning his release date in December 2013. DSOF ¶¶ 23-25. Woods argues that his letters to the former Warden should have been in the Warden's "pile of work" when Magana arrived on January 1, 2014 (Pl. Resp. at 6), but this is based on speculation and is insufficient to defeat summary judgment. *See Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014). Likewise, Woods's observation that Magana "doesn't say he's a 100 percent sure . . . that he didn't receive correspondence from me" (Pl. Resp. at 9) is insufficient to proceed to trial on the issue of whether Magana knew about Woods's letters concerning his release date and ignored them. *See Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2012) (explaining that non-movant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial" to defeat summary judgment).

Moreover, Woods cannot defeat summary judgement by reliance on his statement that he told correctional officers about being held past his release date and that the officers, in turn, told Woods that they would give the message to the Warden. A party opposing summary judgment cannot create a disputed issue of fact by relying on inadmissible hearsay. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Here, the statements of correctional officers cannot be offered for the truth of the matter asserted, *i.e.,* that the officers in fact told Magana about Woods's concerns, against Magana. Woods cannot show that Magana knew about and was deliberately indifferent to Woods's allegedly prolonged incarceration based on hearsay. A reasonable juror could not find that Magana was responsible for Woods's allegedly prolonged incarceration.

***The Events of February 7, 2014***

Finally, in addition to his allegation that he was unlawfully incarcerated from November 28, 2013 to February 4, 2014, Woods alleges: "Then on top of that they came and got me again 2/7/14 and brought me back to Cook County for no reason." [13] at 4. Woods subsequently clarified in response to defendant's motion for summary judgment that he does not challenge the fact of his incarceration on February 7, 2014, but rather contends that he was wrongfully confined at Stateville for a couple of hours on that date when he should have been confined at Cook County Jail. *See* Pl. Resp. at 8. Woods does not explain why he believes that his brief

confinement at Stateville was unconstitutional. Woods also produced no evidence showing that Defendant Magana was aware of Woods's transit through Stateville on February 7, 2014. Consequently, Woods's claim concerning his detention at Stateville on February 7, 2014, cannot survive summary judgment.

## CONCLUSION

Defendant's motion for summary judgment [40] is granted. Enter judgment in favor of defendant and terminate civil case.

If Woods wishes to appeal this decision, he may file a notice of appeal in this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). If Woods chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Woods may accumulate a strike under 28 U.S.C. § 1915(g).

ENTER:

Date: 7/17/15

Manish S. Shah
United States District Judge